IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RODERICK OWENS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-880-CFC |
| | ) | |
| BRIAN EMIG, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

---

Roderick Owens. Pro se Petitioner.

Carolyn S. Hake, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

August 21, 2026
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court is Petitioner Roderick Owens's Petition under 28 U.S.C § 2254 for Writ of Habeas Corpus by a Person in State Custody. (D.I. 3) Owens thereafter filed a Memorandum of Law in support of his Petition. (D.I. 10) Respondents filed an Answer in opposition and Owens filed a Reply.[1] (D.I. 20; D.I. 26) For the reasons discussed below, the Court denies the Petition.

## I. BACKGROUND

The Delaware Supreme Court summarized the factual and procedural history of Owens's case as follows:

> On December 5, 2013, Wilmington Police Department detectives working the night shift were patrolling the area around 24th and Carter Streets in Wilmington. The detectives considered this "a high crime and drug area." Detective Thomas Lynch explained that, not only do "people often loiter in that area to buy, sell, and consume drugs[ ]," but there were several "shots fired" complaints in the preceding days.
>
> As the detectives drove northbound on Carter Street in their unmarked police car, they noticed an individual, later identified as Owens, sitting on the steps of a vacant house at 122 East 24th Street. According to Detective Lynch, the owner of the house, which was boarded up, had reported his concerns with "[u]nknown individuals sitting on the steps and on the porches of the houses that were vacant." When the detective turned westbound at the corner of 24th and Carter, Owens stood up and adjusted an object in his waistband. Detective Lynch, who was driving the unmarked car, made eye contact with Owens. In Lynch's

[1] The docket contains an identical Reply at D.I. 27.

words, as he "slowed the vehicle down, [Owens] began to walk off the steps. As . . . we began to open on the driver's side, he immediately fled on foot."

Detective Lynch summarized what happened next:

> A. When [Owens] began [to] flee on foot, I observed he was still grasping that object in his waistband. So as I exited my vehicle, began to follow him on foot. As he continued to run grasping his waistband, I yelled, "stop, police."
>
> ...
>
> He has his right hand grabbing an object in the front of his waistband by his belt or where his pants would end near his belly.
>
> ...
>
> I could see that it looked like a large rectangular object, and the way the shirt came down, it made a distinct line above where the waistband would be on the pants.
>
> ...
>
> These were characteristics that are consistent with an armed subject.
>
> ...
>
> About a block after [Owens] began to run, he discarded a firearm on Jessup Street on the corner.

Another officer then apprehended Owens in an alley. Detective Lynch recovered the object—a firearm and a magazine that was ejected from the firearm when it hit the ground —Owens had discarded while running away.

. . .

Owens was indicted in February 2014 on one count each of possession of a firearm by a person prohibited ("PFBPP"), possession of ammunition by a person prohibited ("PABPP"), carrying a concealed deadly weapon ("CCDW"), and resisting arrest. The CCDW and resisting arrest charges were severed from the PFBPP and PABPP charges, creating an "A" case as to the former and "B" case as to the latter.

At Owens's first case review, which occurred in April 2014, the State offered a plea to CCDW and PFBPP, agreeing to cap its sentencing recommendation at 15 years of Level V incarceration. That same month, trial counsel filed a motion to suppress evidence—the firearm and magazine—arguing that the detectives who stopped Owens lacked a reasonable articulable suspicion that would justify an investigatory stop. This, according to Owens, rendered his detention and the seizure of evidence during it unlawful. Owens thus urged the Superior Court to suppress that evidence. The suppression hearing occurred in August 2014. Detective Lynch, whose testimony is summarized above, was the only witness at the suppression hearing.

The court denied Owens's motion finding that:

> [U]nder the totality of the circumstances, Det. Lynch had reasonable articulable suspicion to stop Defendant. Defendant was sitting at a vacant home with boarded windows bearing a "No Loitering" sign. Det. Lynch was aware that the owner had reported that people had been loitering at the home. The home was in a high crime area where Det. Lynch had received a call of gunshots just a few days prior to the incident. Before Det. Lynch could approach Defendant, Defendant stood up and adjusted his waistband and fled while grasping a rectangular object in his waistband. Det. Lynch was familiar with these types of

> movements as being the movements of an armed individual. Based on the totality of these circumstances, Det. Lynch had reasonable articulable suspicion to seize the Defendant.

Owens's final case review took place on September 2, 2014, a week before the court denied the suppression motion. Trial counsel appeared on behalf of Owens. Neither Owens nor the prosecutor was present in the courtroom. During the final case review, trial counsel represented to the court that there was a pending suppression motion and that the most recent plea offer included a sentencing recommendation by the State of the "minimum mandatory" of "ten years"—down from the previously offered 15 years. Trial counsel did not have a copy of the plea offer during the final case review. Counsel did not state that Owens, who, like the prosecutor, was not in the courtroom, had rejected the 10-year offer. Nevertheless, the court responded: "Based upon your representation, I don't think I need to speak with Mr. Owens. I can understand why the plea is being rejected at this time."

Trial in the "B" case took place over two days starting on September 16, 2014. The jury found Owens guilty of both PFBPP and PABPP. The State then filed a motion to declare Owens a habitual offender and to sentence him under 11 *Del. C.* § 4214(a) for the PFBPP offense. If granted, Owens would be exposed to an enhanced sentencing range of 15 minimum mandatory years to life imprisonment on the PFBPP offense.

In December 2014, the court granted the State's habitual-offender motion and sentenced Owens to the minimum-mandatory 15 years at Level V for the PFBPP charge and 8 years at Level V for the PABPP charge, to run consecutively, suspended after 4 years at Level V.

*Owens v. State* ("*Owens 2023*"), 301 A.3d 580, 584–86 (Del. 2023) (footnotes omitted). The State subsequently entered a *nolle prosequi* on the charges in the "A" case. (D.I. 21-1 at 5, Entry No. 28) Owens appealed, raising the Fourth Amendment search and seizure claim presented in his motion to suppress and denied by the Delaware Superior Court. (D.I. 21-3) The Delaware Supreme Court affirmed Owens's final judgment on March 4, 2016. *Owens v. State*, 2016 WL 859351 (Del. Mar. 4, 2016).

In 2017, Owens filed a pro se motion for postconviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 Motion"). *See State v. Owens* ("*Owens 2021*"), 2021 WL 6058520, at *4 (Del. Super. Ct. Dec. 21, 2021). After numerous delays, counsel was appointed and an amended Rule 61 Motion was filed. *See id.*

> The amended motion alleged that Owens's trial counsel provided ineffective assistance in two ways. First, Owens claimed that his counsel "failed to meet with [him] to discuss the State's evidence and also to discuss any plea offers [that] were presented to [him]." Nestled inconspicuously in Owens's statement of this claim was a reference to the final case review as a "critical stage[ ] of his proceedings" and an allegation that Owens's absence from it caused him to "suffer[ ] constitutional prejudice." And second, Owens alleged that his counsel "failed to investigate witnesses who could have assisted in his defense" and, in particular, in support of his motion to suppress.
>
> The amended motion was supported by numerous exhibits, including an affidavit by Owens. Owens's affidavit recounts, among other things, how he identified

two witnesses who might be helpful at the upcoming suppression hearing. . . .

Owens's affidavit also addressed the plea negotiations and his absence from the September 2, 2014 final case review:

> During my proceedings [my counsel] never informed me that a plea offer existed. On September 2, 2014 a final case review was conducted. I never met with counsel nor was I present at the final case review. I waited in a holding cell all day then returned back to [Howard R. Young Correctional Institution]. [On] that date [my counsel] did not speak with me and explain that a plea offer was available. Counsel did not review the strengths and weaknesses of the State's case. Counsel did not give me an opportunity to consider the plea offer.

Notably, Owens does not state that, had the late-breaking plea offer been shared with him, he would have accepted it.

Owens's trial counsel submitted an affidavit responding to Owens's allegations. In it, he addressed his reason for not interviewing the witnesses who might testify about the condition of 122 East 24th Street and the associated loitering problem. The reason was short and to the point: trial counsel "did not believe that the relevant inquiry [at the suppression hearing] was whether the house was vacant."

Trial counsel's description of the circumstances surrounding the plea offers in Owens's case was more elaborate. At the outset, counsel categorically denied Owens's charges that he failed to meet with Owens to discuss the State's evidence or to discuss the State's plea offers. He specifically recalled a video conference on December 19, 2013, a meeting at the courthouse during the initial case review in April 2014, and a June 17, 2014

meeting "at the prison . . . to discuss [the] case and the upcoming suppression hearing." He also confirmed that, under the initial plea offer, which the State extended at the first case review, Owens would plead guilty to PFBPP and be subject to a 15-year minimum mandatory sentence as a habitual offender. Counsel conveyed this offer, which was to remain open until the final case review, to Owens and discussed it with him. Although counsel's affidavit does not describe Owens's response to the offer, it is undisputed that he rejected it.

About a revised plea offer and what occurred at the final case review, trial counsel was less emphatic. Drawing on his memory of events that occurred five and a half years earlier, counsel again denied Owens's allegation that he did not present the plea offer extant as of the final case review to Owens. Admittedly, counsel's denial was not entirely unequivocal and drew more on his professional habits than on his memory:

> I believe I met with Mr. Owens at final case review. I cannot think of a circumstance where I have ever not met with a client at a case review where the client was present. Final case review occurred on September 2, 2014. I do not have independent recollection that I met with Mr. Owens that day, but I cannot imagine a scenario where I would not have met with him.
>
> [ ] Further, in an email to the State about the severed charges written after the September 2, 2014 final case review, I wrote "I will certainly convey the offer to my client as I'm required to do. I'm not inclined however, to believe that my client will want to accept it." There is simply no way that I would have failed to convey a plea offer to my client.

Although Owens's postconviction relief motion asked the Superior Court to hold an evidentiary hearing, the court denied the motion without one, relying instead on the

> parties' written submissions, including the affidavits described above. The court found that Owens had "received, but rejected, every plea offer." The court made short work of Owens's depiction of the final case review as a "critical stage" requiring his presence; a final case review, according to the court, in contrast to a critical stage "is merely a docket-management tool that operates as a status conference and streamlines administrative matters before a case is set for trial." And as for Owens's ineffective-assistance-of-counsel claims based on trial counsel's failure to interview and call witnesses at the suppression hearing, the court agreed with Owens's trial counsel: the witnesses' potential testimony about the condition of 122 East 24th Street and whether there was a loitering problem in the area was not relevant to whether the officers had a reasonable suspicion that Owens possessed a concealed weapon.

*See Owens 2023*, 301 A.3d at 586-88 (footnotes omitted). On appeal, Owens contested each of those rulings and claimed that the cumulative effect of his counsel's ineffectiveness and his absence from the courtroom during his final case review warrants postconviction relief. *See id.* at 588. The Delaware Supreme Court affirmed the Superior Court's decision denying Owens's Rule 61 Motion. *See id.* Owens thereafter filed the instant habeas Petition before the Court.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal quotation marks and citations omitted).

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *See Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. <u>Exhaustion</u>

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-45 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). The exhaustion requirement is based on principles of comity and requires a petitioner to give "state courts one full opportunity to resolve

any constitutional issues by invoking one complete round of the State's established appellate review process." *See, e.g.*, *O'Sullivan*, 526 U.S. at 845.

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See O'Sullivan*, 526 U.S. at 842-48; *Castille v. Peoples,* 489 U.S. 346, 350-51 (1989); *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" if the state court decision finally resolves the claim based on its substance, rather than on a procedural or other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"

or the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1), (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 209 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is contrary to clearly established federal law "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405). The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). A decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014) (recognizing Supreme Court has repeatedly restated holding describing "unreasonable application"). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A petitioner must do more than convince a habeas court that the state court's decision was incorrect—he or she must show that it "was objectively unreasonable." *See Williams*, 529 U.S. at 409. To do so, a petitioner must demonstrate that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. In other words, § 2254(d) preserves authority to issue a writ in "cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* at 102. A habeas court cannot supersede the trial court's determination if "'[r]easonable minds reviewing the record might disagree'" about the finding in question. *See Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that § 2254(e)(1)'s clear and convincing evidence standard only pertains to state-court determinations of factual issues and § 2254(d)(2)'s unreasonable standard applies to factual decisions).

### D. Ineffective Assistance of Counsel

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689.

Under the second *Strickland* prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court may deny an ineffective assistance of counsel claim by deciding only one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697.

When determining whether a state court reasonably applied *Strickland* pursuant to § 2254(d)(1), the Court must review the state court decision through a doubly deferential lens. *See Richter*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *See id.* (internal citations omitted). The question becomes not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *See id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *See id.* at 111-12. Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

## III. DISCUSSION

In his timely Petition, Owens raises the following claims: (1) ineffective assistance of counsel ("IAC") for failing to communicate any plea offers (D.I. 3 at 5; D.I. 10 at 7-11; D.I. 26 at 4-9); (2) IAC for failing to investigate favorable witnesses (D.I. 3 at 7; D.I. 10 at 12-14; D.I. 26 at 17-21); (3) his due process rights were violated by failing to have him present at a critical stage (D.I. 3 at 8; D.I. 10 at 15-18; D.I. 26 at 10-16); and (4) cumulative error (D.I. 3 at 10; D.I. 10 at 18).

### A. Claim One: Ineffective Assistance of Counsel for Failing to Communicate Plea Offers

In Claim One, Owens alleges that his trial counsel was ineffective for failing to communicate any plea offers. Owens contends that trial counsel failed to inform him of both the initial plea offer of fifteen years as a habitual offender and the subsequent, reduced plea offer of ten years as a non-habitual offender.[2] Owens raised this claim in his Rule 61 proceedings, and the Delaware Superior Court denied it as meritless. *See Owens 2021*, 2021 WL 6058520, at *5, *9-10. On appeal, the Delaware Supreme Court affirmed. *See Owens 2023*, 301 A.3d at 589-91. Therefore, the Court must review Claim One under § 2254(d), and Owens will only

---

2 In some instances, Owens suggests that counsel failed to inform him of only the second ten-year plea offer (D.I. 10 at 11), but he primarily alleges it was both offers. This inconsistency was also present in his state court filings. (D.I. 21-10 at 34–35)

be entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

Under the first prong of the § 2254(d)(1) inquiry, the Court must determine if the Delaware Supreme Court's decision was contrary to clearly established federal law. *Strickland* applies in the plea bargain context. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). Generally, defense counsel has a duty to communicate formal plea offers from the prosecution and failure to do so may constitute constitutionally deficient performance by counsel. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012). To show prejudice in this context:

> a defendant must show that but for the ineffective [assistance] of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164. The Delaware Supreme Court correctly identified *Strickland*/*Lafler* as governing Owens's instant IAC argument and applied those standards to the facts of his case. *See Owens 2023*, 301 A.3d at 588-94 (citing both *Strickland* and *Lafler* directly as well as state court precedent applying *Strickland*). Additionally, the Delaware Supreme Court did not confront a set of facts materially indistinguishable from Supreme Court precedent and arrive at a result different from

that precedent. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

Next, the Court must determine if the Delaware Supreme Court reasonably applied the *Strickland/Lafler* standard to the facts of Owens's case. In its analysis of this claim, the Delaware Supreme Court reasoned:

> Owens's claim that his trial counsel's performance during the plea-bargaining process was objectively unreasonable depends entirely on his allegation that counsel did not share the final-case-review plea offer with him. In response to the Superior Court's unequivocal rejection of that allegation, Owens argues that the court's factual finding—that "Owens received, but rejected, every plea offer"—is not supported by competent evidence. For Owens, his trial counsel's lack of an independent recollection of the events surrounding the final case review renders counsel's sworn statement that he believes that he communicated the offer inconsequential. At the very least, Owens argues, the court abused its discretion by not holding an evidentiary hearing to resolve the competing factual narratives.
>
> . . . Here, the court concluded that a hearing would not be desirable because "the record refutes Mr. Owens's allegation that Trial Counsel never told him about a plea." Was the drawing of this conclusion an abuse of discretion? We think not.
>
> In the first place, that trial counsel had no independent recollection of meeting with Owens at the final case review, which was five and a half years in the past, does not negate all else that he said in his affidavit. He did recall, for instance, communicating the initial plea offer to Owens who, in turn, says that never happened. And as previously noted, in his sworn affidavit, trial counsel stated that (i) he believed he met with Owens during the

> final case review, (ii) it was his regular practice to meet with his clients at case review, and (iii) he "[could not] imagine a scenario where [he] would not have met with [Owens] [at the final case review.]" He also appended to his affidavit an email that he sent to the prosecutor after the September 2014 final case review, confirming that he would "certainly convey" plea offers to Owens as he was "*required to do*." Our rules of evidence recognize that such "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Here, the court's crediting of trial counsel's sworn statements regarding his professional habits and routine practice was not an abuse of discretion.
>
> . . .
>
> The Superior Court's factual determination that "Owens received, but rejected, every plea offer" extended by the State is also supported by the record. Because that determination discredits the factual premise of Owens's claim about his counsel's deficient performance during the plea-negotiation process, the Superior Court did not err by denying it.
>
> And Owens's claim fails for an additional reason: he cannot show prejudice under *Strickland*. To show prejudice, Owens was required to demonstrate that, had the plea offer been communicated to him, there is a reasonable probability that he would have accepted it. Owens neither hints in his amended motion for postconviction relief nor swears in his supporting affidavit that he was open to pleading guilty at his final case review. In fact, as the Superior Court observed, with a decision on Owens's motion to suppress still pending, all signs pointed in the other direction.

*Id.* at 589-91 (footnotes omitted).

To rebut the Delaware Supreme Court's finding that trial counsel communicated the plea offers to him, Owens asserts that: (1) the form containing the initial plea offer of fifteen years has signature lines for either accepting or rejecting the offer, but neither section contains his signature (D.I. 3 at 5; D.I. 10 at 7, 8, 10; D.I. 21-13 at 238; D.I. 26 at 5); (2) trial counsel's case file notes do not reference plea discussions or rejections (D.I. 10 at 8, 10; D.I. 26 at 5); (3) trial counsel's affidavits do not aver that Owens rejected the plea offers (D.I. 10 at 8; D.I. 26 at 6; D.I. 21-12 at 2-6; D.I. 21-13 at 230–236); (4) Owens's affidavit from his Rule 61 proceedings "explicitly states that during his proceedings trial counsel never informed him of any plea offer" (D.I. 10 at 10); and (5) he sent trial counsel a letter regarding his willingness to accept a plea offer (D.I. 10 at 10-11; D.I. 26 at 7).[3]

The deference the AEDPA requires this Court to apply to trial court factual findings includes credibility determinations. *See* 22 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 339-40 (providing trial court is in best position to make credibility determinations and, under AEDPA, trial court factual determinations are presumed correct absent clear and convincing evidence to contrary); *Vickers v.*

---

3 In his Memorandum of Law, Owens asserts that his nonhabitual mandatory minimum was miscalculated during pretrial stages. (D.I. 10 at 8, 9) The Court does not need to consider the validity of that assertion, however, because it is irrelevant to the instant claim—which involves only whether trial counsel communicated the plea offers to Owens.

*Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017) (stating credibility determinations are presumed correct absent clear and convincing evidence to contrary). In his affidavit, trial counsel affirmatively states he conveyed and discussed the fifteen-year plea offer with Owens and specifically denies Owens's claim that the ten-year plea offer was never presented. (D.I. 21-13 at 231-32) Although he did not have an independent recollection of meeting with Owens on the day of his final case review or discussing the ten-year plea offer with him, trial counsel averred that "[t]here is simply no way that I would have failed to convey a plea offer to my client" and he could not "envision any scenario where I would have [informed the Court about the ten-year plea offer] and not informed my client of the offer." (*Id.* at 232, 236) In his affidavit, trial counsel also recognized his professional obligation to convey plea offers to his clients and declared he "always convey[s] plea offers to [his] clients." (*Id.*) The Delaware Superior and Supreme Courts found the sworn statements of trial counsel to be credible, and Owens has not presented clear and convincing evidence showing that the Delaware state courts were wrong to do so. *See Andrews v. Cameron*, C.A. No. 11-926, 2012 WL 4712033, at *8-10 (W.D. Pa. Aug. 30, 2012), *report and recommendation adopted*, 2012 WL 4742857 (W.D. Pa. Oct. 3, 2012) (denying habeas relief for IAC claim alleging failure to communicate plea in which state court credited trial counsel's testimony that, although he did not specifically recall plea offer, his long-standing practice is

to communicate plea offers and he could not imagine not communicating plea offer to client); *see also Dasher v. Att'y Gen., Fla.*, 574 F.3d 1310, 1314 (11th Cir. 2009) (holding petitioner failed to overcome deference AEDPA required habeas courts to apply to state court factual findings even though testimony state court found credible consisted of usual practices rather than specific recollection); *Carrion v. Smith*, 549 F.3d 583, 590 (2d Cir. 2008) (recognizing that courts can base factual findings on attorney's "usual practice[s]," noting that "[t]ime inevitably fogs the memory of busy attorneys. That inevitability does not reverse the *Strickland* presumption of effective performance." (internal quotations omitted)); *United States v. Arredondo,* 349 F.3d 310, 315 (6th Cir.2003) (upholding factual finding based on habit testimony).

Furthermore, the letter Owens references to indicate his willingness to accept a plea offer states that he is "interested in a plea to CCDW and ***not*** Poss[ession] by person prohibited." (D.I. 21-13 at 109 (emphasis added)) Both plea offers, however, required Owens to plead guilty to PFBPP. (D.I. 21-13 at 223-24, 238; D.I. 21-16 at 10 n.25) Therefore, the letter Owens relies on to support his willingness to accept a plea offer not only fails to constitute clear and convincing evidence contrary to the Delaware courts' finding that he rejected the plea offers, it arguably supports that finding. While Owens's arguments may have some persuasive value, they do not amount to clear and convincing evidence to the contrary as is required to overcome the presumption of correctness that this Court must afford the Delaware courts'

finding that trial counsel communicated both plea offers to Owens, and Owens rejected those offers.

Viewing the Delaware Supreme Court's decision under the required "doubly deferential" lens, there is certainly a reasonable argument that counsel satisfied *Strickland*'s deferential standard. Although Claim One can be denied for failing the first *Strickland* prong alone, the Court nonetheless finds that Owens has also failed to meet his burden under the prejudice prong. Based on its findings that "Owens neither hints" in his Rule 60 Motion "nor swears in his supporting affidavit that he was open to pleading guilty at his final case review," and that "all signs pointed in the other direction" with the motion to suppress still pending, the Delaware Supreme Court found that Owens failed to demonstrate that, had the plea offer been communicated to him, there is a reasonable probability that he would have accepted it. *See Owens 2023*, 301 A.3d at 591. Although Owens now claims he would have accepted the offer, the Court, when reviewing claims under § 2254(d), is limited to the record that was before the state court that adjudicated the claims on the merits. *See Cullen v Pinholster*, 563 U.S. 170, 180-185 (2011) (stating it would be contrary to exhaustion requirement to allow petitioner to overcome adverse state-court decision with facts not before state court); 28 U.S.C. § 2254(d)(2) (explicitly limiting review under § 2254(d)(2) to "the evidence presented in the State court proceeding"). Moreover, as discussed above, the letter Owens relies on to suggest

he was willing to accept a plea offer states that he was not willing to plead guilty to the possession by a person prohibited charges, which was required by both plea offers.[4] Therefore, the Court finds that the Delaware Supreme Court reasonably concluded that Owens was not prejudiced by trial counsel's alleged failure to communicate the plea offers.

For these reasons, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* or *Lafler* in denying Owens's allegation that trial counsel was ineffective for failing to communicate any plea offers. Owens has failed to show that the Delaware Supreme Court's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. The state court decision was not

---

[4] Owens also relies on a letter he sent to postconviction counsel regarding the claims to be included in his Rule 61 Motion, in which Owens states that if he had known of the ten-year offer, he would have accepted it. (D.I. 10 at 11, 23) This letter, however, is not part of the state court record and, as explained *supra*, cannot be considered by the Court. Additionally, Owens cannot use any alleged failure of postconviction counsel to circumvent the limitation that the habeas court is limited to the record before the state court that adjudicated the claim on the merits. *See Shinn v. Ramirez*, 596 U.S. 366, 382 (2022) (reiterating that "state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner"). To the extent Owens is attempting to assert a claim that his postconviction counsel was constitutionally ineffective, it is well settled that ineffective assistance of state postconviction counsel is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(i) (providing "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254").

objectively unreasonable and certainly passes the AEDPA's low threshold that federal habeas relief is precluded if reasonable minds reviewing the record might disagree about the finding in question. The Court, therefore, denies Claim One.

### B. Claim Two: Ineffective Assistance of Counsel for Failing to Investigate Favorable Witnesses

In Claim Two, Owens alleges that his trial counsel was ineffective for failing to investigate favorable witnesses. Specifically, Owens contends he identified three witnesses who were willing to testify at his suppression hearing regarding the condition of the property and whether they had called the police about people loitering on the property where the police first spotted Owens. Owens alleges that his trial counsel was ineffective for failing to interview and present these witnesses at the hearing and that the trial court would have granted suppression if he had. Owens raised this claim in his Rule 61 proceedings, and the Delaware Superior Court denied it as meritless. *See Owens 2021*, 2021 WL 6058520, at *10-11. The Delaware Supreme Court affirmed that denial. *See Owens 2023*, 301 A.3d at 593-95. As a result, the Court must review Claim Two under § 2254(d), and Owens will only be entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

As noted above, the Delaware Supreme Court correctly identified *Strickland* as the clearly established Supreme Court precedent governing ineffective assistance

of counsel claims and applied its standards to the facts of Owens's case. *See Owens 2023*, 301 A.3d at 588-94. Furthermore, the Delaware Supreme Court did not confront a set of facts materially indistinguishable from Supreme Court precedent and arrive at a result different from that precedent. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The Court next directs its attention to whether the Delaware Supreme Court reasonably applied *Strickland* to Claim Two. In its analysis of this claim, the Delaware Supreme Court reasoned:

> We turn next to Owens's claim that his "trial counsel was ineffective by failing to present evidence at the suppression hearing that would have caused the court to grant the motion to suppress had it been presented." The evidence would have been presented through three witnesses, none of whom were interviewed by Owens's trial counsel. According to Owens's amended motion, one witness, if called, would have produced photographs taken shortly after Owens's arrest that would show that 122 East 24th Street was not boarded up. According to Owens's affidavit, a second witness—the property manager—would have testified that he had never spoken with anyone associated with the Wilmington Police Department about a loitering problem in the vicinity. This witness would also have testified that the home on the property was not vacant or boarded up and did not bear a "No Loitering" sign. A third witness—the property owner—had sent a letter to Owens's trial counsel stating that she had not called the police on the date of Owens's arrest.
>
> In the Superior Court, Owens asserted that his trial counsel's failure to call these witnesses at the suppression hearing "resulted in prejudice to Owens[ ] as they would have provided testimony to challenge the testimony of

Detective Lynch[.]" More specifically, Owens contended that the witnesses' testimony "would have challenged Detective Lynch's basis for stopping Owens in the first place and only could have assisted Owens in challenging the legality of the stop of Owens in the first place."

In his affidavit, Owens's trial counsel acknowledged that he did not interview any of the identified witnesses and that he had received the letter from the property owner. . . . [H]is reason for not pursuing the angle suggested by Owens was simple: "At that time, I did not believe that the relevant inquiry was whether the house was vacant. I believed that the relevant inquiry was whether police seized Owens unlawfully."

The Superior Court found that trial counsel's analysis was reasonable and that, therefore, his failure to call the witnesses did not constitute deficient performance under *Strickland*. The court also concluded that it was not substantially likely that the appearance and testimony of the witnesses would have resulted in a different ruling on Owens's motion to suppress. Thus, there was no prejudice under *Strickland*. We agree on both counts, either of which suffices to defeat Owens's ineffective-assistance claim.

. . .

Here, Owens's trial counsel correctly focused on the lawfulness of Detective Lynch's encounter with Owens. The condition of the property where the detective first discovered Owens was of marginal significance to that issue. As the Superior Court observed, Owens grasped at an object in his waistband even before the detectives had stopped their car, and he fled when Detective Lynch opened the driver's side door. While running, Owens again reached for the object tucked in his waistband, which was "large" and "rectangular," leading the detective to believe that he was armed. Facing these facts, it was not objectively unreasonable for Owens's trial counsel to conclude that the lawfulness of Owens's detention did not

> hinge on the forgone witnesses' testimony. It follows that trial counsel's decision not to call the witnesses did not deprive Owens of the effective assistance of counsel.
>
> Having upheld the Superior Court's determination that trial counsel's performance was not deficient, we need not address the issue of prejudice. We nevertheless register our agreement with the Superior Court that, given the marginal relevance of the testimony of the identified witnesses, it is not substantially likely that their presence at the suppression hearing would have led to a different result. Owens thus suffered no prejudice.

*Owens 2023*, 301 A.3d at 593-95.

Owens argues that the Delaware Supreme Court unreasonably applied *Strickland* because "[t]o make a strategic decision counsel is required to investigate, without any investigation into favorable witnesses this cannot be called strategy this is a decision based on negligence." (D.I. 26 at 18) He further argues that "counsel's failure to call any witnesses could not be the result of a sound strategic choice because [counsel] never assembled the information necessary to make such a choice." (*Id.*) Owens also disputes the Delaware Supreme Court's finding that the condition of the house is of marginal relevance. (*Id.* at 18-19)

The problem with Owens's argument is that trial counsel knew the substance of the information that these witnesses would provide if he interviewed them or called them to testify. This is not a case where failure to investigate resulted in a failure to discover pertinent facts. The strategic decision made by counsel was that the testimony that these witnesses would have provided pertained to the condition

of the property—an issue he, and subsequently the Delaware Superior and Supreme Courts, found of marginal relevance.[5] Therefore, Owens falls well short of establishing that "*every* 'fairminded juris[t]' would agree that *every* reasonable lawyer" would have engaged in further investigation of these potential witnesses or had them testify at the suppression hearing. *Dunn v. Reeves*, 594 U.S. 731, 739-40 (2021) (quoting *Richter*, 562 U.S. at 101); *see also See Strickland*, 466 U.S. at 691 (explaining that counsel has duty to make reasonable investigations ***or*** to make reasonable decision that makes particular investigations unnecessary); *Williams v. Superintendent Fayette SCI*, No. 26-1291, --- F.4th ----, 2026 WL 2121066, at *5 (3d Cir. July 23, 2026) (citing *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) for precedent that counsel cannot be deemed ineffective for failing to raise meritless claim).

Finding that Owens has failed to satisfy the first *Strickland* prong, the Court does not need to address the issue of prejudice. Nevertheless, the Court finds that the Delaware Supreme Court's determination that Owen's could not demonstrate

5 The legality of Owens's search and seizure under the Fourth Amendment of the United States Constitution is not before this Court. Even if it had been raised as a claim it would not be cognizable on habeas review. *See Stone v. Powell*, 428 U.S. 465, 494 (1976) (holding "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial").

prejudice was also not an unreasonable application of *Strickland*. Both the Delaware Supreme and Superior Court found that the information Owens sought to procure through these witnesses was of "marginal relevance" and that it was "not substantially likely that their presence at the suppression hearing would have led to a different result." *Owens 2023*, 301 A.3d at 595. Accordingly, Owens has failed to show a substantial likelihood of a different outcome but for counsel's performance.

For these reasons, the Court concludes that the state courts did not unreasonably apply *Strickland* in denying Owens's allegation that trial counsel was ineffective for failing to investigate favorable witnesses. Owens has failed to show that the Delaware Supreme Court's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. Accordingly, the Court denies Claim Two.

### C. Claim Three: Violation of Due Process Rights for Failing to Have Owens Present at a Critical Stage

In Claim Three, Owens alleges that his absence from the courtroom during final case review violated his due process rights and Rule 43 of the Rules of Criminal Procedure for the Superior Court of the State of Delaware.[6] Owens raised this claim

---

6 In his Memorandum of Law, Owens indicated he was alleging a violation of Rule 43 of the Federal Rules of Criminal Procedure. (D.I. 10 at 15) In his Reply, however, he clarifies that he meant Rule 43 of Delaware Superior Court Rules of Criminal Procedure. (D.I. 26 at 10)

in his Rule 61 Motion, and the Delaware Superior Court denied it as meritless. *See Owens 2021*, 2021 WL 6058520, at *11-12. On appeal, the Delaware Supreme Court affirmed that denial.[7] *See Owens 2023*, 301 A.3d at 591-93. The Court, therefore, must review Claim Three under § 2254(d), and Owens will only be entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

To the extent Claim Three asserts a violation of Rule 43 of Rules of Criminal Procedure for the Superior Court of the State of Delaware, that claim is not cognizable of federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reemphasizing precedent that claims based on alleged state law errors are not cognizable on federal habeas review). Likewise, to the extent Owens is basing his claim on noncompliance with the New Castle County Criminal Case Management Plan, that too is an issue not cognizable on habeas review. *See id.* The Court, however, will review Claim Three to the extent Owens alleges a violation of his due process rights.

The Delaware Supreme Court analyzed this claim as follows:

> Embedded in Owens's claim . . . is a subsidiary claim that his absence from the courtroom during the final case

[7] The Delaware Supreme Court noted that the Superior Court addressed this claim within the context of Owens's IAC claim, but that it viewed and treated it as a freestanding claim separate from the IAC claims. *See Owens 2023*, 301 A.3d at 591.

review is grounds for postconviction relief. This is so, according to Owens, because a final case review is a critical stage in a criminal proceeding.

. . . Owens appears to argue that because plea negotiations are a critical stage in a criminal case and thus the right to effective counsel attaches to them, defendants have a right to be present for the negotiations. Owens also makes the odd claim that he "only could have learned of the [final plea] offer had he been present in the courtroom for his final case review." These arguments are based on a misunderstanding of how plea negotiations typically unfold and a conflation of a defendant's right to counsel and his right to be present for particular proceedings.

Owens grounds his "critical stage" argument on the uncontroversial proposition that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." He does not, however, explain how his absence from the courtroom at the September 2, 2014 final case review ran afoul of this principle. To be sure, he does claim that, had he been in the courtroom, he would have learned of the final plea offer, but that is really just a rehashing of the factual claim—his claim that he was not made aware of the final plea offer—that the Superior Court rejected. And, in any event, the record of what occurred in the courtroom during the final case review shows that no plea negotiations ever took place at the event; the prosecutor was not even there.

It is also important to note here that plea negotiations do not typically occur under direct judicial supervision in a courtroom. They can take place in a variety of settings, such as a prosecutor's office, a vacant jury room, or over the telephone. When that happens, the defendant is almost never physically present. Incarcerated defendants will ordinarily learn of case-review plea offers during a conference with counsel in a courthouse "lock up" or via a video conference. The fact that the Superior Court has developed a series of status conferences—case reviews—

during which the status of plea negotiations is discussed does not transform those conferences into a critical stage as that term is used in criminal constitutional jurisprudence.

This conclusion is borne out by Superior Court Criminal Rule 43, which addresses the presence of the defendant during criminal proceedings. Under the rule, the defendant's presence is required "at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence. ..." No mention is made of case reviews—initial or final.

This is not to say that Rule 43's list is exhaustive as there is a constitutional dimension to the right of a criminal defendant to be present for certain proceedings. The right "is rooted to a large extent in the Confrontation Clause of the Sixth Amendment," and it is also protected by the Due Process Clause. "[D]ue process guarantees a defendant's right to be personally present 'whenever [the defendant's] presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" Applying these principles, courts have held that the right to be present does not extend to pretrial hearings concerning discovery sanctions, pretrial conferences, and potential hearings designed to expedite procedures leading up to trial.

A final case review in the Superior Court sitting in New Castle County bears no substantial relation to a criminal defendant's opportunity to defend against the charges he is facing. Rather, as the Superior Court noted, a "[f]inal case review is merely a docket-management tool that operates as a status conference and streamlines administrative matters before a case is set for trial." The accuracy of the description is confirmed by the Superior Court (New Castle County) Criminal Case Management Plan. At the final case review, counsel advises the court of, among other things, the status of plea negotiations, outstanding motions and discovery disputes, if any. The Case

> Management Plan contemplates that, if the case is not to be resolved at the final case review, the court will address the defendant in open court and advise him that "[a]bsent exceptional and unforeseen circumstances and for good cause shown," the court will not accept a plea agreement after that date. Granted, for reasons that are unclear, this last step did not occur in Owens's case. That is regrettable. Had the Case Management Plan been followed, the record of the colloquy between the court and Owens would have laid to rest the factual question at the heart of Owens's amended motion: did Owens's counsel communicate the final-case-review plea offer to him? But the absence of that record does not transform a status conference that operates as a "docket-management tool" into a critical stage of constitutional significance. Owens has cited no authority suggesting otherwise, and we are not of the mind to create one here.

*See Owens 2023*, 301 A.3d at 591-93.

United States Supreme Court precedent recognizes a defendant's right to be present at any critical stage of his criminal proceedings if his presence would contribute to the fairness of the procedure. *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (citing *Snyder v. Massachusetts,* 291 U.S. 97 (1934)); *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam) (same). "[T]his privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *See Stincer*, 482 U.S. at 745 (quoting *Snyder*, 291 U.S. at 106-107). The Delaware Supreme Court recognized and applied this precedent in its analysis of this claim. *See Owens 2023*, 301 A.3d at 591-93. Owens does not reference, nor has this Court found, any Supreme Court precedent holding that a pretrial final case

review hearing constitutes a critical stage of a criminal proceeding at which a defendant has a right to be present. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

Owens's arguments to support Claim Three are primarily a rehashing of his IAC claim that trial counsel failed to convey the plea offers—a claim this Court has found to be without merit on habeas review. *See* Section III.A., *supra*. Owens attempts to elevate the status of his final case review by claiming it was the only way for him to find out about the plea offer. Inherently familiar with their own state court procedures, the Delaware Superior and Supreme Court described final case review as nothing more than "a docket-management tool that operates as a status conference and streamlines administrative matters before a case is set for trial." *See Owens 2023*, 301 A.3d at 593 (quoting *Owens 2021*, 2021 WL 6058520, at *11). The Delaware Supreme Court also recognized that plea negotiations do not typically occur with judicial supervision or with a defendant present; and, nevertheless, no plea negotiations took place at the final case review. *Id.* at 592. Review of the transcripts from final case review is consistent with these findings. Accordingly, the Court concludes that the Delaware Supreme's decision was not an unreasonable application of clearly established federal law.

The state court decision certainly passes AEDPA's low threshold that federal habeas relief is precluded if reasonable minds reviewing the record might disagree about the finding in question. Therefore, the Court denies Claim Three.

### D. <u>Claim Four: Cumulative Error</u>

In Claim Four, Owens asserts that the cumulative effect of the errors alleged in his Petition deprived him of due process by eliminating "his right to an autonomous determination of his plea" and jeopardizing "the fairness and integrity of the trial process." (D.I. 3 at 10; D.I. 10 at 18) Owens presented a "cumulative error" claim in his Rule 61 Motion and on appeal from its denial, and both the Delaware Superior and Supreme Court denied it as meritless. *See Owens 2023*, 301 A.3d at 595; *Owens 2021*, 2021 WL 6058520, at *14. Accordingly, Claim Four only warrants relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The United States Supreme Court has not recognized the concept of cumulative error. *See Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019); *Hill v. Davis*, 781 F. App'x 277, 278 (5th Cir. 2019); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *see also Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 590 n.7 (3d Cir. 2015) (noting some debate whether cumulative error claims constitute clearly established federal law as determined by Supreme Court for purposes of deference under AEDPA). Since there is no clearly established federal

law with respect to a cumulative error argument, it would appear that the Court's § 2254(d) analysis is over, and Owens is not entitled to habeas relief for Claim Four.

Nevertheless, the Third Circuit has recognized the cumulative error doctrine on habeas review, holding that "a cumulative error argument constitutes a standalone constitutional claim subject to exhaustion and procedural default." *Collins v. Sec'y of Pa. Dep't of Corr.* 742 F.3d 528, 542 (3d Cir. 2014). Pursuant to the cumulative error doctrine,

> [i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Fahy v. Horn,* 516 F.3d 169, 205 (3d Cir. 2008). The Court, however, cannot factor individual claims into a cumulative error analysis where the Court has found no error; rather the analysis aggregates all the errors that individually have been found to be harmless. *See Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) Given the Third Circuit's recognition of the cumulative error doctrine in habeas proceedings, the Court will exercise prudence and review Claim Four.

The Delaware Supreme Court reviewed and rejected each alleged underlying error and Owens's cumulative error argument, finding that "for a claim of

'cumulative error' to succeed, it must identify multiple errors in the proceedings below" and Owens had failed to identify a single one. *See Owens 2023*, 301 A.3d at 595. As previously discussed, this Court has concluded that Claims One, Two and Three lack merit. As a result, they provide no errors to aggregate. *See Albrecht*, 485 F.3d at 139; *see also Johnson v. Mahanoy SCI*, 144 F.4th 178, 197 (3d Cir. 2025) (stating "[w]e add up errors, not claims" in cumulative error analysis).

Accordingly, the Court denies Claim Four.

## IV. CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Owens's habeas claims do not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed above, the Court denies the instant Petition without an evidentiary hearing and without issuing a certificate of appealability.

The Court will issue an Order consistent with this Memorandum Opinion.